UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 4011 |
| v. | ) | |
| | ) | Chief Judge Pallmeyer |
| NDUDI ANIEMEKA and OBIAGELI | ) | |
| ANIEMEKA, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' MOTION FOR IMMEDIATE ENTRY OF
## JUDGMENT AND TO VACATE POST-TRIAL MOTION SCHEDULE

The United States, by its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, moves (1) pursuant to Fed. R. Civ. P. 58(b)(2) for immediate entry (notwithstanding post-trial motions) of the jury's answers to special interrogatories on the docket, as well as entry of judgment under the False Claims Act, 31 U.S.C. § 3729(a)(1), following the jury verdict in its favor rendered in this case on May 2, 2023, and (2) to vacate the current schedule for post-trial motions, and in support states as follows:

1.    The United States sued defendants Ndudi and Obiageli Aniemeka under the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), seeking recovery for services reimbursed by Medicare that were referred in violation of the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7a, 1320a-7b. On May 2, 2023, the jury returned a unanimous verdict in favor of the United States against both defendants on that claim. Dkt. 221. The jury further answered special interrogatories, finding that the defendants caused 158 false claims to Medicare, and that Medicare paid $425,976.32 on those false claims. Dkt. 224 (sealed). Fed. R. Civ. P. 58 provides that "the court must promptly approve

the form of the judgment, which the clerk must promptly enter, when . . . the jury returns a special verdict or a general verdict with answers to written questions."

2.      On May 8, the court entered the fact of the jury verdict in the United States' favor on the docket, Dkt. 221, but the court has not yet entered a judgment as a separate document as required by Rule 58(a).  The docket entry noting the return of a verdict also did not reflect the jury's answers to the special interrogatories.  *Id.*  The United States asks the court to docket the jury's interrogatory answers, in order to complete the public record of the jury's findings.

3.      After the jury returned its verdict and answers to the special interrogatories, the United States moved for the imposition of mandatory treble damages pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), and the court granted that oral motion.  Dkt. 221.  Accordingly, the United States now askes the court to enter judgment on the issue of damages, imposing them jointly and severally against both defendants, in the amount of $1,277,929.96.

4.      The False Claims Act also requires imposition of civil penalties for each false statement or claim in violation of the Act.  31 U.S.C. § 3729(a)(1).  Here, the jury found the defendants caused 158 false claims.  Dkt. 224 (sealed).  The FCA provides that a person liable under the Act must pay "a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410)" per violation, *i.e.* per false claim or false statement.  In 1999, the civil penalty increased to $5,500 to $11,000 per false claim or statement.  31 U.S.C. § 3729(a)(1); 28 CFR §§ 85.1(a), 85.3(a)(9).  (As of November 2, 2015, the penalties again increased.)

5.      In the joint pretrial order and before the court, defendants offered two arguments against the imposition of civil penalties in the $5,500 to $11,000 range.  Dkt. 201, JPTO, § 2.G.1.

Neither has merit.  First, defendants argued that the proper civil penalty amount should be $2,000 per false claim or statement, incorrectly arguing that this was penalty prior to the May 20, 2009 Fraud Enforcement and Recovery Act (FERA) amendment to the FCA.  That is simply wrong. Beginning with the 1986 amendments to the FCA, the statute read (as to penalties) that a person in violation of the FCA would be liable "for $5,000 and not more than $10,000" in civil penalties for each violation of the Act.  False Claims Act, P.L. 99-562, 100 Stat. 3153 (1986).  There was *no* relevant time period in which the FCA penalty was $2,000 per false claim.  Further, Congress adjusted the FCA civil penalty to a range of $5,500 to $11,000 in 1999, nearly a decade prior to the conduct in this case.[1]  28 C.F.R. § 85.3(a)(9) (Aug. 30, 1999).

6.      Defendants next invoke the *ex post facto* clause of the Constitution—a bar to the retroactive application of criminal laws—and incorrectly try to apply it to the inflation adjustment of the False Claims Act's civil penalty provisions.  While this is factually meritless because the $5,500 to $11,000 penalty amount was the law for about a decade before the Aniemekas' conduct,

---

[1] Further, even if the May 20, 2009 FERA amendments changed the penalty amount, which they did not, those amendments apply to conduct after that date, which includes all of the claims at issue here.  Indeed, there are no pre-May 20, 2009 violations in the universe of 158 false claims found here.  A violation of the FCA is completed on the date the claim is made, or, if the claim is paid, on the date of the government's payment.  *United States ex rel. McGee v. IBM Corp.*, No. 11-C-3482, 2017 WL 4467458, at *6 (N.D. Ill. Oct. 6, 2017); *United States v. Tech Refrigeration*, 143 F. Supp. 2d 1006, 1007 (N.D. Ill. 2001) (FCA statute of limitation begins to run when claim is paid, if paid); *United States ex rel. Kreindler & Kreindler v. United Technologies, Corp.*, 777 F.Supp. 195, 200 (N.D.N.Y.1991); *see also Jana, Inc. v. United States*, 41 Fed. Cl. 735, 743 (1998) (when the government pays a false claim, the FCA statute of limitations begins to run on the date of final payment).  Thus, the relevant event for determining application of the FERA amendment is the date the payment is made by the government.  *U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 383 (W.D. Tex. 2013).  In the universe of false claims presented at trial— the Grand Home Health claims for services referred by defendant Ndudi Aniemeka, which totaled 158 false claims, resulting in $$425,976.32, as found by the jury—not one of those claims was paid before May 20, 2009.  Pl. Ex. 21, at tab Grand Home Claims Detail.

it is also legally meritless because every federal court of appeals to consider whether the *ex post facto* clause applies to the FCA has held that it does not. *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 878 (D.C. Cir. 2010) (rejecting as inapplicable *ex post facto* clause argument against retroactivity of certain FERA amendments to the False Claims Act); *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 338 (3d Cir. 2021) (rejecting *ex post facto* argument because "the FCA's treble damages and civil penalties do not violate the Ex Post Facto Clause"); *Sanders v. Allison Engine Co.,* 703 F.3d 930, 948 (6th Cir. 2012) (rejecting defendant's effort to "transform what has been denominated a civil penalty into a criminal penalty" and holding "retroactive application of the FCA does not violate the Ex Post Facto Clause's prohibition on retroactive punishments"). Not that the court need even consider the *ex post facto* argument because the conduct at issue here occurred years *after* the penalty range of $5,500 to $11,000 was established.

7. While the FCA requires the court to award a penalty between $5,500 and $11,000 for each of the 158 false claims, the amount of penalty to assess *within* the range is at the court's discretion. Courts look at a totality of the circumstances when determining the penalty within that range to award, including factors like whether the defendant accepts responsibility for their conduct, *United States v. Saavedra*, 661 F. App'x 37, 46 (2d Cir. 2016); whether the violations were isolated or recurrent, *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 389 (4th Cir. 2015); and the severity of the misconduct and scienter involved. *U.S. ex rel. Miller v. Bill Herbert Intern. Const., Inc.*, 501 F. Supp. 2d 51, 56 (D.D.C. 2007).

8. Here, a maximum penalty award of $11,000 per false claim, for a total of $1,738,000, is appropriate. In particular, defendants both continued to deny their receipt of things

4

of value in connection with the referral of Medicare patients while under oath—denials the jury plainly rejected—showing neither accepted responsibility for their conduct. Further, the receipt of kickbacks was not one brief mistake, but *this* scheme continued for about a year and a half. Third, the facts at trial showed the defendants pushed for greater and greater remuneration from Grand Home Health, in an alarming abuse of power.

9. Therefore, the United States asks that the court enter judgment against the defendants in the total amount of $3,015,928.96, made up of $1,277,929.96 in treble damages and $1,738,000 in civil penalties, as soon as possible. Entry of judgment (and the resulting judgment lien) should be done "promptly" once the trial is over and the jury has rendered a verdict. Fed. R. Civ. P. 58(b)(2). The prompt judgment required by the rules avoids further dissipation of assets or impairment of liens by defendants. The court may even enter a judgment on damages with judgment on penalties to come, pursuant to Fed. R. Civ. P. 54(b), which permits entry of judgment on fewer than all claims. Any delay risks harm to the United States in its collection efforts.

10. Finally, because judgment should be entered promptly, the United States is concerned for defendants that their current briefing schedule could result in a forfeiture of defendants' district court and appellate rights, based on the present deadlines. Dkt. 221. Both Rule 50(b) and 59 require a motion to be filed within 28 days of entry of judgment, and, both, by their own language, require judgment to have been entered prior to the filing of the motion. While Rule 60(b) does not have the same time limitation as Rules 50(b) and 59, the standard for such relief is higher, and a Rule 60(b) motion only tolls the time to appeal if filed within 28 days of judgment, just like a timely Rule 50(b) or 59 motion. *See* Fed. R. App. P. 4(a)(4)(A). Accordingly, to not impair defendants' rights, the United States asks not only that the court enter prompt

judgment (as required by Rule 58), but also that it vacate the post-trial briefing schedule in favor of motion practice in accord with the existing rules.

WHEREFORE, the United States requests that the court enter the jury's special interrogatory answers on the docket, and enter immediate judgment in favor of the United States, for $1,277,929.96 in damages, and $1,738,000 in civil penalties (or, at a minimum, enter judgment immediately on the treble damage award of $1,277,929.96, with the issue of penalties to be determined).

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney
Northern District of Illinois

By: s/ Sarah J. North
KATHLEEN MARIE FLANNERY
SARAH J. NORTH
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
Phone: (312) 353-7223
Phone: (312) 353-1413
kathleen.flannery@usdoj.gov
sarah.north@usdoj.gov